# Merrick *v*, DuPont et al., Appellants.

*Statutes—Construction—Prospective operation — Necessary implication—Construction by court — Subsequent legislation — Presumption—Common law—Act of June 7, 1917, P. L. 429.*

1. A statute should be so construed as to operate prospectively only, unless its language clearly expresses a contrary intention, or there is a necessary implication to that effect.

2. A statute should be so interpreted that it will accord, as nearly as may be, with the theretofore existing course of the common law.

3. Where a court of last resort has construed language appearing in a statute, it will be presumed that the legislature, when using the same language in a later cognate statute, intended that the same construction should be placed thereon.

*Intestate laws—Decedents' estates—Husband and wife—Dower rights of widow in land aliened by husband—Act of June 7, 1917, P. L. 429.*

4. Prior to the Intestate Act of June 7, 1917, P. L. 429, a widow had only a common law dower interest in lands aliened by her husband in his lifetime, without her joining in the conveyance.

5. Section 3 of the Intestate Act of 1917, which, for the first time, gives to a widow the same share in lands aliened by her husband in his lifetime, without her joining in the conveyance, as in those in which he died seized, applies only to lands aliened after the date of the statute.

Argued January 11, 1926. Appeal, No. 37, Jan. T., 1926, by defendants, from decree of C. P. Chester Co., sitting in Equity, No. 715, for plaintiff on bill in equity, in case of Lydia E. Merrick v. Pierre S. DuPont and Longwood, Inc. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill for partition. Before HAUSE, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendants appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Ralph B. Evans* and *Walter S. Talbot,* with them *Isabel Darlington,* for appellants.—If section 3 of the Intestate Act of 1917 is construed to apply to lands conveyed before the date of the act, it is in violation of article I, section 17, of the Constitution of Pennsylvania, and article I, section 10, and the 14th Amendment of the Constitution of the United States: Stockdale's Est., 29 Pa. Dist. R. 1013; Strong v. Clem, 12 Ind. 38; Davis v. O'Ferrall, 4 G. Green (Iowa) 168; Hilton v. Thatcher, 31 Utah 360; Hopkins v. Frey, 2 Gill 359 (Md.); Peirce v. O'Brien, 29 Fed. 402.

The Intestate Act of 1917 does not clearly disclose a legislative intention that the statute should have a retrospective effect: Russell's Est., 284 Pa. 164.

The title to the act does not disclose an intention to deal with real estate conveyed by the decedent in his lifetime: Lineaweaver v. Stoever, 1 W. & S. 160; Borland v. Nichols, 12 Pa. 38; Strain v. Kern, 277 Pa. 209.

*Ernest Harvey,* with him *A. M. Holding* and *Howard F. Troutman,* for appellee.—Section 3 of the Intestate Act of 1917 does not apply to lands aliened before December 31, 1917, by a husband who died intestate after said date leaving his widow surviving.

Dower inchoate is not an estate in land, contingent upon survivorship, but is a mere contingent claim: Arnold v. R. R., 32 Pa. Superior Ct. 452; Kirk v. Dean, 2 Bin. 341.

Though a widow's statutory interest in the lands of her deceased husband, under the Act of 1833, comes not within the definition of common-law dower, it is, nevertheless, an estate of freehold: Schall's App., 40 Pa. 170; Gourley v. Kinley, 66 Pa. 270; Bachman v. Chrisman, 23 Pa. 162.

An act of assembly is not in conflict with the federal or state Constitution prohibiting the impairment of the

obligation of a contract, unless it operates directly on the contract and literally impairs its obligation: Erie & N. E. R. R. v. Casey, 26 Pa. 287.

The Intestate Act of 1917, in regard to its section under discussion, is not void or unconstitutional merely because it is retrospective in operation: Bleakney v. Bank, 17 S. & R. 64; Gault's App., 33 Pa. 94; Lane v. Nelson, 79 Pa. 407; Swartz v. Boro., 237 Pa. 473; Kiskaddon v. Dodds, 21 Pa. Superior Ct. 351; Buchanan v. Corson et al., 51 Pa Superior Ct. 558.

The statute is constitutional if confined to such provisions as are germane to the expressed legislative purpose stated in the title: Com. ex rel. v. Snyder, 279 Pa. 234; Com. v. Rink, 267 Pa. 408; Jewell's Est., 235 Pa. 119; Olyphant Boro. v. Del. & H. Co., 225 Pa. 147.

OPINION BY MR. JUSTICE SIMPSON, February 1, 1926:

On August 21, 1902, Richard Merrick sold and conveyed certain real estate, but his wife, plaintiff herein, did not joint in the deed. His vendee sold it to Pierre S. Du Pont, one of the defendants and the present owner of the property, and Longwood, Incorporated, the other defendant, is his lessee of it for a term of 999 years. On January 6, 1924, Richard Merrick died intestate and without issue, leaving his said widow and certain collateral relatives, to survive him. Claiming that, under the Intestate Act of June 7, 1917, P. L. 429 (which, as will be observed, was passed between the date of her husband's conveyance and his death), she was entitled to a $5,000 absolute interest in that property, and also to a fee simple estate in an undivided one-half of the balance, she filed the present bill in equity for partition. The court below entered a decree sustaining her claim, and defendants' appeal.

A number of serious objections are raised to the decree, but, since one of them is fatal, we will not consider the others. If the Act of 1917 is applicable, plaintiff's possible life estate in an undivided one-third of the land,

was increased by that statute not less than four and a half times (Shippen & Robbins's App., 80 Pa. 391; Datesman's App., 127 Pa. 348), and defendant's interest, without his consent, was decreased accordingly. We do not now determine whether this can be done constitutionally; but the fact that such a claim is made, calls upon us to consider carefully the language of the act from which it is alleged to have resulted.

We said in Phila., Balt. & Wash. R. R. v. Quaker City Flour Mills Co., 282 Pa. 362, 366: "It is an established rule in the interpretation of statutes that they should be construed as operating prospectively, unless the language clearly expresses a contrary intent, or [there is] a necessary implication to that effect: U. S. Fidelity & Guaranty Co. v. Struthers Wells Co., 209 U. S. 306, 314; U. P. R. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 199; Cameron v. U. S., 231 U. S. 710, 720; Schwab v. Doyle, 258 U. S. 529, 534. 'There is no canon of construction better settled than this, that a statute shall always be interpreted so as to operate prospectively and not retrospectively, unless the language is so clear as to preclude all question as to the intention of the legislature': Taylor v. Mitchell, 57 Pa. 209, 211; Neff's App., 21 Pa. 243, 247; Horn & Brannen Mfg. Co. v. Steelman, 215 Pa. 187, 191; Brubaker's Est., 59 Pa. Superior Ct. 109, 113. 'Words in a statute ought not to have a retrospective operation, unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied': U. S. v. Heth, 3 Cranch 399, 413." Our first question then is: Does the Act of 1917, when tested by this standard, compel us to hold that it is retroactive in its effect? We are clear that it does not.

Sections 1, 2 (a) (as amended by the Act of July 11, 1917, P. L. 755), and 3 are the ones to be particularly considered. So far as pertinent they provide as follows:

"Section 1.  Be it enacted &c.  That the real and personal estate of a decedent, whether male or female, re-

maining after payment of all just debts and legal charges, *which shall not have been sold,* or disposed of by will, or otherwise limited by marriage settlement, shall be divided and enjoyed as follows; namely,—.....

"Section 2(a). Where such intestate shall leave a spouse surviving and other kindred, but no issue, the surviving spouse shall be entitled to the real or personal estate, or both, to the aggregate value of $5,000, and in addition, in the case of a widow, to the widow's exemption as allowed by law......and in [further] addition thereto [she] shall be entitled to one-half part of the remaining real and personal estate......

"Section 3. The shares of the estate directed by this act to be allotted to the widow shall be in lieu and full satisfaction of her dower at common law, so far as relates to land of which the husband died seised; and her share in lands aliened by the husband in his lifetime, without her joining in the conveyance, shall be the same as her share in lands of which the husband died seised"......

Without directly saying so, plaintiff apparently contends that so much of section 1 as limits the rights of distributees to lands "which shall not have been sold," was only intended to exclude such as had been sold and not conveyed; but there is no warrant for this conclusion, either in the statute itself, in the prior cognate acts which use substantially the same expression, or in any decision of this court.

Section 3 of the Act of April 19, 1794, 3 Sm. Laws 143, 145, says that, after payment of debts, "the remaining part of any lands, tenements and hereditaments, and personal estate, of any person deceased, *not sold* or disposed of by will, nor otherwise limited by marriage settlement," shall be divided between the widow and the heirs or next of kin in the way stated. By the Act of April 8, 1833, P. L. 315 (which was drafted by William Rawle, Thomas I. Wharton and Joel Jones, commissioners appointed under the resolution of March 23, 1830, P. L.

408, to "revise, collate and digest......the civil code of
this State"), it is provided, in section 1, that distribu-
tion of "the real and personal estate of a decedent,
whether male or female, remaining after payment of all
just debts and legal charges, *which shall not have been
sold* or disposed of by will, or otherwise limited by mar-
riage settlement, shall be divided" between the widow
and heirs or next of kin as therein specified.    The Act
of 1833 was amended by the Act of April 1, 1909, P. L.
87, but, so far as affects the question now under con-
sideration, the latter statute simply quoted and reën-
acted the foregoing language of the Act of 1833.    Finally
came the Act of 1917,—first above quoted and now being
construed,—which was drafted by Judges JOHN MAR-
SHALL GEST and THOMAS J. BALDRIGE and by George
E. Alter, Esq., the commissioners appointed by virtue of
the Act of April 23, 1915, P. L. 177, "to codify and revise
the law of decedents' estates."    There is no language in
any of the statutes above quoted, nor in the careful re-
ports of the commissioners proposing the enactment of
those of 1833 and 1917, which limits the scope of the
words we have italicized.    On the contrary, each of those
statutes provides only for distribution of the real and
personal estate of decedents, and hence excludes from its
purview property which was not part of the estate of a
decedent.

Nor is there anything in the immediate context of the
italicized words, which limits their meaning in any way.
They cannot be made to refer to sales for the purpose
of settling a decedent's estate, since this is provided for
by the clause "remaining after payment of all just debts
and legal charges."    Nor are they limited to property
which shall have been "sold......by will," for property
is not thus sold; if any had been, decedent would not
have died intestate as to it, and hence these statutes
would have had no application to it.    It is clear, there-
fore, that the italicized words, as appearing in the vari-
ous statutes, must be given their normal meaning (un-

less—which possibility we will hereinafter exclude, so far as relates to lands previously sold—section 3 of the Act of 1917 now compels a different conclusion) ; as a consequence, property sold by a decedent, without the joinder of his wife, is not within the purview of any of these acts, and plaintiff is entitled to have only the dower given to her by the common law.

This conclusion is not lacking in authority. In Borland v. Nichols, 12 Pa. 38, 42, it is said that "the Act of 1794,.....like its successor of 1833, has reference solely to the realty of which the baron was owner at the time of his death: Riddlesberger v. Mentzer, 7 W. 141. If this be the true meaning of the older statute, and I do not understand it is denied, by what warrant can we ascribe a broader signification to the Act of 1797,...... The truth is, no one can read these statutes and those that have followed them of like import, without at once perceiving their operation was intended to be confined to lands an intestate had left to descend on his heirs, or a testator had given to his devisees. The simple absence of every direct expression, indicative of a design to bring lands aliened within the purview of the enactments, ought, in itself, to be accepted as sufficiently proving no such design was entertained; for surely, had the law-maker intended so important a change in the existing law, he would not have left it to a doubtful inference drawn from inconclusive reasoning. This suggestion is in accordance with one of the primary canons of construction, which teaches that statutes are to be interpreted in subordination to the common law, a change of which is not to be imputed to the legislative body, where the legislative act can be construed in harmony with it." This reasoning was cited with approval in Gray v. Mc-Cune, 23 Pa. 447, 449-50, and the conclusion reached has never since been doubted. As the Act of 1917, so far as regards the instant question, contains substantially the same language as the statutes considered in those opinions, it must, of course, receive the same construction

(Hedrick v. Harrisburg, 278 Pa. 274), unless the latter part of section 3, which is a departure from the others, compels a different result as to conveyances made before its passage; and to this question we now address ourselves.

It is at once apparent that, if section 1 is considered without reference to section 3, and the expression "which shall not have been sold" is construed according to the usual signification of those words, plaintiff can have no statutory interest in the land now being partitioned; for that language is broad enough to include—and therefore to exclude from the class of gifts provided for in the act—all land aliened by a decedent, whether before or after the passage of the statute. This much, at least, is established by the foregoing reasoning and authorities. On the other hand, if the language of section 3 is to be broadly interpreted without reference to section 1, a widow will have the statutory interest in lands aliened by her husband, whether the sale was made before or after the passage of the act. These two constructions cannot coexist; hence we must find a way to reconcile the two provisions, and this may readily be done by treating the act as prospective only. Thus considered, section 1 will give the widow the interest specified in section 2(a) in lands "which shall not have been sold" by decedent before the passage of the act; and by section 3 "her share in lands aliened by the husband in his lifetime [after the passage of the act].....shall be the same as her share in lands of which the husband died seized." This is the only reasonable reconciling interpretation to be given to the two sections, and it has the additional merits of according with the rule as to prospective statutory operation, of avoiding a possible injustice to purchasers of land before the act was passed, and of so construing the statute that it will agree, as nearly as may be, with the theretofore existing course of the common law: Kates's Estate, 282 Pa. 417.

To some degree the conclusion we have reached is borne out by section 19 of the act, which provides that: "The real estate of such intestate shall be vested in the person or persons entitled thereto, under the provisions of this act, for such estate as the intestate had therein." "Had therein," especially under the views expressed in Borland v. Nichols, supra, necessarily means at the time of his death; and since, at that time, this decedent had no interest in the property sought to be partitioned, plaintiff could obtain no rights in it "under the provisions of this act," as she nevertheless claims to do.

But little need be said in answer to her contention regarding sections 5, 6, 23, 27 and 28 of the statute. Each of them refers, in terms, to the real and personal estates of decedents, and to no other estates; hence this contention has been fully answered by what we have already said. Plaintiff vigorously contends, however, that, because no reason is given why a nonsupporting husband (section 5), a deserting wife (section 6) and a murdering spouse (section 23), should not be deprived of all interest in lands conveyed by the other spouse during his or her lifetime, just as certainly and effectually as in property passing under the intestate laws, the necessary conclusion is that the legislature must have intended to include both classes within the purview of these three sections, and hence of the statute generally, including the part of section 3 now under consideration. This is a clear non sequitur, however. The learned commissioners who drafted the act, and the legislature which passed it, were alike familiar with article III, section 3 of the state Constitution, and hence wisely limited the three sections mentioned to the distribution of the real and personal property of intestates, which was the one subject clearly expressed in the title of the statute.

It follows from what has been said that the only interest plaintiff has in the lands she seeks to have divided between herself and the defendants, is a common-law right of dower therein; and hence the single remaining

question, which we might have been called upon to decide, is whether or not she can obtain that interest by means of the present bill in equity for partition. This point was squarely raised in defendants' answers, and perhaps with sufficient certainty in one of the exceptions to the adjudication of the trial judge; but the dismissal of that exception is not specified as error, and the only assignment which even remotely suggests the point, is the one which objects to the final decree. The statement of the questions involved does not refer to it, nor was it argued in the briefs or orally. Possibly these omissions may be accounted for by the fact that the matter was of no moment if the decree was correct; and hence we give leave to present the point, if desired, for the consideration of the court below, when the record is returned to that tribunal.

The decree of the court below is reversed at the cost of appellee, and the record is remitted for further proceedings, not inconsistent with this opinion.