889 A.2d 78

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee**

v.

**Lori FOSTER, Appellant.**

Supreme Court of Pennsylvania.

Argued May 17, 2005.

Decided Dec. 30, 2005.

---

Peter M. Good, New York City, Susan Michele Zeamer, C. Lee Anderson, Harrisburg, for Lori Foster, appellant.

Laurence M. Kelly, Montrose, for PA Trial Lawyers Ass'n, appellant amicus curiae.

Nathan W. Karn, Michael B. Magee, Hollidaysburg, for State Farm Mut. Auto. Ins. Co., appellee.

Katherine Van Buskirk Oliver, State College, for, PA Defense Institute, appellee amicus curiae.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

Appellant Lori Foster was injured when she was forced to jump out of the way of an unidentified vehicle while working as a flagger on the highway. Foster filed a claim for uninsured motorist benefits under an automobile insurance policy issued by appellee State Farm Mutual Automobile Insurance Company. She faxed State Farm a copy of the report form she received from her employer, but she never reported the accident to the police. State Farm filed a declaratory judgment action alleging Foster was not entitled to uninsured benefits because she had failed to report the accident to the police or other governmental authority, as required by both the insurance policy and the Motor Vehicle Financial Responsibility Law (MVFRL) 75 Pa.C.S. §§ 1701–1799.7. The policy provides, in pertinent part:

4. Other Duties Under Medical Payments, Funeral Benefits, Loss of Income, Death, Dismemberment and Loss of Sight, *Uninsured Motor Vehicle* and Underinsured Motor Vehicle Coverages

The person making the claim also shall:

\* \* \*

c. under the uninsured motor vehicle coverage, *report an accident caused by an unidentified land motor vehicle to the police as soon as practicable* and to us within 30 days or as soon as practicable.

State Farm Policy, at 7 (emphasis added).

The MVFRL definition of "uninsured motor vehicle" includes:

\* \* \*

(3) An unidentified motor vehicle that causes an accident resulting in injury *provided the accident is reported to the police or proper governmental authority* and the claimant

notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

75 Pa.C.S. § 1702 (emphasis added).

Foster argued that absent a showing of prejudice, State Farm could not deny coverage on this basis, particularly when it had not alleged prejudice. The trial court concluded *sua sponte* that State Farm had been prejudiced by Foster's failure to notify police, and entered judgment in favor of State Farm.

Foster appealed to the Superior Court, arguing that under *Brakeman v. Potomac Insurance Company*, 472 Pa. 66, 371 A.2d 193 (1977), State Farm was required to demonstrate prejudice arising from the failure to notify police.[1] *Brakeman* addressed the enforceability of an insurance policy's provision which required the insured to provide written notice of an accident to the insurer "as soon as practicable" after the accident. This Court held "where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position." *Id.*, at 198. The rationale underlying this holding was that since such notice provisions are generally "dictated by the insurance company to the insured" to protect the insurer's interests, *id.*, at 196, enforcement of these provisions, absent prejudice to the insurer, would result in an inequitable forfeiture, allowing the insurer to refuse the coverage for which the insured paid. *Id.*, at 196–97. Therefore, if the insurer was not harmed by the lack of notice, the reason behind the notice provision—protection of the insurer's interests—was no longer a concern, and enforcement of the provision to deny coverage was neither logical nor fair. *Id.*, at 197.

The Superior Court, by unpublished decision, rejected Foster's argument that *Brakeman* was controlling, and the court

---

1. Foster further contended the trial court erred in concluding State Farm was prejudiced, and in raising the issue *sua sponte*.

did not reach the issue of the trial court's *sua sponte* determination that prejudice existed. The Superior Court affirmed the order entering declaratory judgment in favor of State Farm. We granted allowance of appeal to determine whether an insurer must demonstrate prejudice, pursuant to *Brakeman,* when the insured has failed to report the accident to the police as required by § 1702 of the MVFRL.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). "Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words." *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995). In ascertaining the intent of the General Assembly, it is presumed "the General Assembly intends to favor the public interest as against any private interest." 1 Pa.C.S. § 1922(5); *see English,* at 87. The legislative concern for the increasing cost of automobile insurance is the public policy to be advanced by statutory interpretation of the MVFRL. *See Burstein v. Prudential Property and Casualty Insurance Company,* 570 Pa. 177, 809 A.2d 204, 207–08 (2002).

Foster argues the Superior Court's decision, in effect, overruled *Brakeman* by holding it was no longer applicable due to the enactment of the MVFRL, and claims the court erred in holding an insured's failure to notify the police about an accident was *per se* prejudicial to an insurer. She contends *Brakeman* should have been applied to her case.

Contrary to Foster's assertion, the Superior Court neither overruled *Brakeman*[2] nor held that failure to report an accident is *per se* prejudicial to the insurer; rather, the court held *Brakeman* did not apply, and therefore State Farm was not

---

**2.** As the Superior Court's decision in the instant case was unpublished, it is not of precedential value. *See* Superior Court I.O.P. 65.37 (unpublished memorandum decision shall not be relied upon or cited by Court or party). Non-precedential decisions cannot overrule existing case law.

required to show prejudice. *See State Farm Mutual Automobile Insurance Company v. Foster,* No. 1200 MDA 2002, unpublished memorandum at 8–9, 2004 WL 885833 (Pa.Super. filed January 22, 2004) (finding *Brakeman* "not controlling under the facts" and "not applicable here").

■ The MVFRL had not been enacted when *Brakeman* was decided. The legislative concern behind enactment of the MVFRL was "the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." *Burstein,* at 207 (citing *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 640 A.2d 1234, 1234 (1994)). Section 1702's police notification requirement advances the policy of keeping automobile insurance affordable to the public by minimizing fraudulent claims "and the attempted recovery of benefits in cases where accidents were alleged to have been caused by 'phantom' vehicles." *Jackson v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 394 Pa.Super. 274, 575 A.2d 626, 628 n. 2 (1990); *see also Blazquez v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 757 A.2d 384 (Pa.Super.2000) (purpose of § 1702's reporting requirement is prevention of fraudulent claims; Department of Transportation not "proper governmental authority" within meaning of § 1702); *Owens v. The Travelers Insurance Co.,* 450 Pa.Super. 242, 675 A.2d 751 (1996) (purpose of § 1702's reporting requirement is to prevent fraud; employer and Department of Labor and Industry not "proper governmental authority" within meaning of § 1702).[3] The cost to the insurer of paying fraudulent claims is ultimately passed on to the public in the form of higher premiums. That is, the purpose behind § 1702's reporting requirement is protection of the public's interest in affordable automobile insurance—the primary goal of the MVFRL.

**3.** Foster argues these cases are inapplicable because they involve the Assigned Claims Plan, 75 Pa.C.S. §§ 1751–1757, where the funding for insurance does not come from premiums paid by the insured but instead from the insurer. *See* Appellant's Brief, at 16–17. However, the MVFRL's reporting requirement does not differentiate between claims made under the Assigned Claims Plan and claims made under insurance contracts.

In contrast, the purpose of the notification requirement in *Brakeman* was protection of the insurer's private interest. The requirement was not imposed by a statutory scheme to further a public policy interest, but was drafted by the insurer to protect its own interest in being able to conduct timely investigations of claims. *See Brakeman*, at 197. The notice provision in *Brakeman* required the insured to report the accident to the insurer, whereas § 1702 requires reporting to the police or other proper governmental authority, agents independent from the insurer itself. Based on the differing purposes behind the notification provisions in *Brakeman* and § 1702, we agree with the Superior Court that *Brakeman's* prejudice requirement is inapplicable to the notice provision of § 1702.

Foster argues, however, that the intent behind the MVFRL should not apply to an insurance contract; an insurance contract is essentially a contract of adhesion, and the MVFRL is not concerned with forfeiture of the insured's policy. Foster claims that because the State Farm policy places the notification requirement in its section pertaining to duties of the insured, whereas the MVFRL includes the reporting requirement in its definition of "uninsured vehicle," the intent behind the MVFRL does not apply to the policy's provisions.

Foster's attempt to distinguish between the two notification provisions fails. She overlooks the fact that, unlike *Brakeman*, which only required the insurer be notified, the instant policy requires *police* notification, just as the MVFRL does. Regardless of where the requirement is located within the policy, it is required under the MVFRL and is consistent with the MVFRL's purpose of preventing fraudulent claims by requiring that accidents be reported to the police. Furthermore, to the extent there is any conflict between the policy and the MVFRL: " 'stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws.' " *Prudential Property and Casualty Insurance Company v. Colbert*, 572 Pa. 82, 813

A.2d 747, 751 (2002) (quoting *Allwein v. Donegal Mutual Insurance Company,* 448 Pa.Super. 364, 671 A.2d 744, 752 (1996) (quoting Couch on Insurance 2d (Rev. ed.) § 13.7 at 827 (1984))).

Finally, Foster contends the purpose of the police reporting requirement was fulfilled since she reported the accident to her doctors, employer, and State Farm. However, § 1702's language does not refer to an insured's employer as an authority to be notified, and it requires reporting to the insurer in addition to, not instead of, notifying the police. As the Superior Court held in *Owens* and *Blazquez,* § 1702's fraud prevention is not achieved by reporting to employers or other agencies which do not investigate accidents, care for accident victims, or ensure highway safety; the police are charged with reporting and investigating accidents and are "in a unique position to prevent fraud. . . ." *Owens,* at 753; *see also Blazquez,* at 387 ("[G]overnmental agencies which are proper repositories for reporting under the MVFRL are those that care for victims of accidents such as governmental fire and rescue squads, those agencies which investigate accidents such as law enforcement, and those agencies charged with the safety of the roads and highways, such as PennDOT." (citation omitted)).

Thus, the MVFRL's provision is controlling, and neither its plain language, the case law interpreting it, nor its underlying policy require that prejudice must be established before uninsured coverage can be denied based on lack of police notification. The Superior Court did not err in concluding that *Brakeman* was inapplicable, and the denial of uninsured coverage to Foster was proper.

Order affirmed. Jurisdiction relinquished.

Chief Justice CAPPY and Justice NEWMAN join the opinion.

Justice NIGRO did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion.

Justice BAER files a dissenting opinion in which Justice CASTILLE joins.

Justice SAYLOR, concurring.

I join the majority opinion, subject to two conceptual differences.

First, the majority suggests that police notification is required by the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1701–1799.7. *See, e.g.,* Majority Opinion, 585 Pa. at 536–37, 889 A.2d at 82. I believe, however, that the statute delineates the minimum amount of coverage that insurance carriers must offer to policyholders,[1] as well as the most restrictive terms that insurers can impose relative to aspects of automobile insurance coverage, including uninsured and underinsured motorist coverage. *See* 75 Pa.C.S.A § 1731. From this frame of reference, it seems to me that nothing precludes an insurer from omitting a police notification provision from the terms of coverage for losses attributable to uninsured motorists that it may provide.

Second, I am of the belief that, although the cost-containment objective of the MVFRL is well recognized, the statute's remedial purposes should not be overlooked. *Accord Burstein v. Prudential Property and Cas. Ins. Co.,* 570 Pa. 177, 203–04, 809 A.2d 204, 220 (2002) (Saylor, J., dissenting) ("In the UM/UIM arena, competing policy concerns have been clearly identified—while frequently acknowledging the remedial purposes of the legislatively prescribed offer of UM/UIM insurance, the Court has repeatedly emphasized the legislative concern for the increasing cost of insurance as a central policy to be advanced by the MVFRL." (citation omitted)).[2] I agree

1. The purchase of the offered uninsured motorist coverage (or of additional coverage) is, of course, optional. *See* 75 Pa.C.S.A. § 1731(a).

2. I realize that I was in a dissenting position in *Burstein;* however, since *Burstein's* issuance, the Court has offered additional expressions that appear to vary the respective emphasis on the cost-containment and remedial objectives. *Compare, e.g.,* Majority Opinion, 585 Pa. at 532–36, 889 A.2d at 80–81 (focusing solely on the MVFRL's cost-containment objective), *with Hoffman v. Troncelliti,* 576 Pa. 504, 839

with the majority, however, that the Legislature acted in furtherance of the cost-containment objective in structuring its requirement for insurers to offer uninsured motorist coverage in a way that authorizes policy terms withholding coverage in the absence of police notification. Further, I agree that such a plainly authorized coverage restriction may be enforced by the insurer consistent with the legislatively established public policy.

Justice BAER, dissenting.

In this case, Appellant Lori Foster was injured when forced to jump out of the way of an unidentified motorist who failed to stop for the stop sign she was holding while working as a flagperson for Glenn O. Hawbaker, Inc. As a result, she went to local emergency room, informed the hospital of the incident, and was treated for leg injuries. Subsequently, her employer accepted her claim for workers' compensation benefits, and Appellee State Farm Mutual Automobile Insurance Company paid her claimed first party medical benefits. Despite the fact that none of the relevant parties contest the validity of the accident or her resultant injury, and that the hospital, her employer and State Farm all received timely notice of her injury, State Farm nonetheless has refused to pay Appellant's claim for uninsured motorist benefits based solely on her failure to satisfy the provision in her insurance policy requiring notification of police. Regrettably, this Court now affirms this miscarriage of justice in conflict with our precedent.

In *Brakeman v. The Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977), this Court recognized that the provisions of an insurance contract are not negotiated, but dictated by the insurance company, and refused to construe strictly a requirement that the insured notify the insurance company of an injury when to do so would result in forfeiture of coverage. Instead, we required the insurance company to demonstrate prejudice resulting from the lack of notice in order to avoid

A.2d 1013 (2003) (emphasizing the statute's remedial purposes and the requirement of liberal construction over the cost-containment objective in the context of the limited tort election under the MVFRL).

the company's use of "a technical escape-hatch by which to deny coverage in the absence of prejudice [or evade] the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected." *Id.* at 197 (citation omitted).

In the interim, the legislature has enacted and amended the Motor Vehicle Financial Responsibility Law (MVFRL) as a replacement for the No–Fault Motor Vehicle Insurance Act for the oft-acknowledged purpose of controlling the spiraling costs of insurance. *See Burstein v. Prudential Prop. and Cas. Ins. Co.*, 570 Pa. 177, 809 A.2d 204, 211–213 (2002) (Saylor, J., dissenting) (setting forth detailed background of MVFRL and its treatment of uninsured and underinsured motorist coverage). In doing so, the legislature made significant changes in an attempt to reduce premiums, including, in 1990, making optional the purchase of uninsured and underinsured motorist coverage. *See id.*; 75 Pa.C.S. § 1731(a) ("Purchase of uninsured motorist and underinsured motorist coverages is optional").

Given the legislature's wholesale revision of Pennsylvania's motor vehicle insurance law in enacting the MVFRL, we can presume that the General Assembly was aware of this Court's holding in *Brakeman,* involving the proper construction of motor vehicle insurance policies. *Cf. Metropolitan Prop. & Liab. Ins. Co. v. Ins. Comm'r of Commonwealth of Pennsylvania,* 525 Pa. 306, 580 A.2d 300, 302 (1990) ("The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded."); *Balkiewicz v. Asenavage,* 406 Pa. 501, 178 A.2d 591, 594 (1962) ("In *Merrick v. DuPont,* 285 Pa. 368, [132 A. 181 (1926)], we reannounced a principle operative throughout the whole course of our existence as a Commonwealth in which the foundations of jurisprudence are in the common law, that a statute should be so interpreted that it will accord, as nearly as may be, with the theretofore existing course of the common law."). A review of the MVFRL, however, reveals no provision that contradicts *Brakeman* or requires the denial of

benefits as a result of an insured's failure to notify police.[1] Although the Majority bases its decision on the inclusion of a notice provision in Section 1702's definition of an uninsured motor vehicle, I do not read that definition as evidence of the legislature's intent to override *Brakeman's* prejudice requirement in notification cases or to require the forfeiture of benefits as a consequence of the failure to comply with a notice provision.

This silence stands in contrast to other provisions of the MVFRL where the legislature has demonstrated its ability to proscribe recovery under certain circumstances. Section 1714, "Ineligible claimants," for example, explicitly bars recovery of first party benefits to owners of currently registered motor vehicles who do not have financial responsibility. Similarly, Section 1718(a), "Exclusion from benefits," provides that an insurer shall exclude an insured from certain benefits when the conduct of the insured contributed to the injury sustained in specified ways, such as intentional injury. Moreover, and directly applicable to the provision of uninsured motorist coverage, Section 1731(d), "Limitation on recovery [of uninsured and underinsured motorist coverage,]" categorically denies recovery of underinsured motorist benefits for persons who have recovered damages under uninsured motorist coverage and recovery of non-economic damages under uninsured or underinsured motorist coverage when the individual would not be able to recover non-economic damages pursuant to Section 1705 (relating to the election of limited tort). Absent from these limitation and exclusion provisions is any mention of the denial of coverage for want of notice.

Moreover, the limitation and exclusion provisions discussed above promote the identified purpose of the MVFRL to reduce the spiraling costs of insurance in Pennsylvania due in part to the large numbers of uninsured motorists who do not contribute to the pool of insurance premiums. *See Burstein v.*

1. In so stating, I concur with Justice Saylor's critique of the Majority's conclusion that police notification is required by the MVFRL, specifically his observation that "nothing precludes an insurer from omitting a police notification provision." *See* Concurring Op., 585 Pa. at 537–39, 889 A.2d at 83.

*Prudential Prop. & Cas. Ins. Co.,* 570 Pa. 177, 809 A.2d 204, 207–08 (2002). This policy, however, is in no way advanced by denying an insured recovery due to the failure to notify police, absent a demonstration of prejudice. Unlike other cases where we have invoked the cost-containment policy, this case does not involve a plaintiff seeking benefits for which she did not pay, but rather concerns a claim for coverage for which Appellant contracted and paid, even where the uninsured motorist coverage was optional. *See id.* (approving coverage exclusion based on cost-containment policy which "functions to protect insurers against forced underwriting of unknown risks that insured have neither disclosed nor paid to insure"). Moreover, I do not believe the strict application of the notice provision against an insured is necessary to foster the legislative intent to prevent fraudulent claims in phantom vehicle cases where, as in this case, notice was provided to the insurance company, which had an incentive to investigate the claim if they suspected fraud.

In the absence of such policy concerns and in light of our decision in *Brakeman,* I believe we must construe the MVFRL liberally in favor of the insured, *see L.S. ex rel. A.S. v. Eschbach,* 583 Pa. 47, 874 A.2d 1150, 1155 (2005), and recognize the remedial purpose of the act and in particular the uninsured and underinsured motorist coverage provisions as discussed more fully in Justice Saylor's concurring opinion. Therefore, I do not read the MVFRL's definition of an uninsured motor vehicle to bar recovery due to the lack of notice to police, especially considering that insurance companies are not required to include the condition in the policies they write. *See* Concurring Op., 585 Pa. at 537–39, 889 A.2d at 83.

Additionally, I distance myself from the Majority's reliance on Superior Court cases strictly applying the notice requirements in Assigned Claims Plan cases. Unlike plaintiffs claiming under the Assigned Claims Plan, cases such as the case at bar trigger the concerns raised in *Brakeman* because they involve plaintiffs who contracted and paid premiums for uninsured motorist coverage and would be subject to forfeiture if the notice provisions were applied strictly. I, therefore, would

reverse the decision of the Superior Court and refuse to provide the insurance company with a "technical escape hatch by which to deny coverage in the absence of prejudice." *Brakeman,* 371 A.2d at 197.

Justice CASTILLE joins this dissenting opinion.