J-A17021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMY PUMMER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GREGG ENGELBRECHT, UBER | : | No. 252 EDA 2024 |
| TECHNOLOGIES, INCORPORATED | : | |
| T/A OR D/B/A UBER AND/OR | : | |
| RASIER, LLC T/A OR D/B/A UBER | : | |
| AND/OR RASIER, LLC-PA AND JAMES | : | |
| RIVER INSURANCE COMPANY | : | |
| v. | : | |
| | : | |
| | : | |
| DIANNE DELONG | : | |

Appeal from the Order Entered January 2, 2024
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2019-10303

BEFORE:  BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                **FILED DECEMBER 30, 2024**

Appellant Amy Pummer appeals from the trial court's order granting summary judgment in favor of Appellee James River Insurance Company (James River).  Appellant argues that the trial court erred as a matter of law when it granted James River's motion for summary judgment.  After careful review, we reverse and remand for further proceedings.

The trial court set forth the following factual and procedural history:

On November 3, 2017, [Appellant] was a passenger in a vehicle driven by Defendant Gregg Engelbrecht, on behalf of Uber [Technologies, Inc. (Uber)], within the City of Bethlehem.  The

vehicle was stationary at a stoplight near Third Street when it was suddenly rear-ended. [Mr.] Engelbrecht and the second driver pulled to the side of the road and exchanged names and insurance information. During this discussion, [Mr.] Engelbrecht took a picture of the other driver's insurance card.

The drivers agreed that the individual who rear-ended [Mr.] Engelbrecht would pay the necessary costs to have the vehicle repaired. Both drivers also decided it was unnecessary to report the incident to the police based upon their observations that the vehicle sustained minor property damage and [Mr.] Engelbrecht's passenger, [Appellant], stated she was okay. [Mr.] Engelbrecht returned to his car after this discussion and subsequently dropped [Appellant] off at her requested destination. [Appellant] did not speak with the second driver nor did she ask [Mr.] Engelbrecht for the second driver's insurance information. [Appellant] stayed in the vehicle for the duration of [Mr.] Engelbrecht's discussion with the second driver.

Shortly after the accident, [Appellant] presented with arm and neck pain. [Appellant] sustained injuries to three discs in her neck at levels C4-5, C5-6, and C6-7 which required fusion surgery. Counsel for [Appellant] contacted [James River] on November 20, 2017 to notify the insurer of [Appellant's] intention to file an uninsured motorist claim. [Appellant] and [James River] corresponded numerous times, wherein [James River] confirmed that, because they lacked any information regarding the second driver's identity or insurance information, they were handling the request as an uninsured motorist claim.

During the course of negotiations and litigation, [James River[1]] conducted an investigation that included multiple [Insurance Services Office (ISO)] claim searches and numerous unsuccessful attempts to contact [Mr.] Engelbrecht via telephone or email to gain information concerning the accident. [James River] was finally able to gain information concerning the accident in approximately October 2020 by cold-calling him. [Mr.] Engelbrecht notified [Appellee] that he could not locate the second driver's insurance information at that time.

[Appellant] initiated this action by filing a complaint on December 12, 2019 naming [Mr.] Engelbrecht, Uber [], and [James River]

_____

[1] James River insured Mr. Engelbrecht's vehicle through a contract with Uber. *See* Trial Ct. Order & Op., 8/1/22, at 2 n.3.

as defendants. An amended complaint was filed on February 10, 2020. Uber and [James River] filed preliminary objections to the amended complaint on February 28, 2020. [The trial] court eventually entered an order on June 9, 2020 sustaining in part and overruling in part [Uber and James River's] respective preliminary objections. On October 2, 2020, counsel for [Mr.] Engelbrecht filed a joinder complaint against the second driver involved, Dianne [DeLong]. [James River] filed [its] own joinder complaint on October 5, 2020. [James River] maintains that [it was] unaware of [Ms. DeLong's] identity until [Mr.] Engelbrecht's joinder complaint was filed.

The parties engaged in discovery, including the depositions of [Mr.] Engelbrecht and [Ms. DeLong]. Both defendants testified that [Mr.] Engelbrecht mailed [Ms. DeLong] an estimate for the repair of his vehicle and [Ms. DeLong] mailed a check covering those costs. [Mr.] Engelbrecht stated that he had received a number of emails from [James River], but disregarded them because they were sorted to spam. He also stated that he had multiple phone conversations with [James River's] representatives once contact was made. When asked, [Mr.] Engelbrecht testified that he was unable to locate the picture of [Ms. DeLong's] insurance information until approximately January 2020. [Ms. DeLong] testified that she had motor vehicle insurance through Erie Insurance at the time of the incident.

On January 3, 2022, [James River] filed a motion for summary judgment. [Appellant] filed an answer on January 28, 2022. The matter was assigned to the [trial court] from the argument list at which time oral arguments were heard. Soon after, [Appellant] presented a motion to compel responses to request for admissions to the [trial] court. The [trial] court held the instant motion for summary judgment in abeyance until the motion to compel was disposed of.

Trial Ct. Order & Op., 8/1/22, at 1-4 (citations and footnotes omitted and formatting altered).[2]

_____

[2] On June 9, 2020, the trial court entered an order dismissing Appellant's claims against Uber. The trial court, by order entered April 19, 2022, granted Mr. Engelbrecht's motion for summary judgment and dismissed Appellant's
*(Footnote Continued Next Page)*

On August 1, 2022, the trial court entered an order granting James River's motion for summary judgment. Appellant filed a notice of appeal, which this Court quashed as premature on February 13, 2023. **See Pummer v. Engelbrecht**, 2196 EDA 2022 (*per curiam* order). In its order, this Court noted that "third-party claims of [Mr.] Engelbrecht and [James River] against [Ms. DeLong] remain outstanding in the trial court, [and therefore,] the August 1, 2022 order of the trial court does not dispose of all claims and of all parties." **Id.** (footnote omitted and some formatting altered). The trial court entered an order January 2, 2024, granting Ms. DeLong's motion for summary judgment, thereby dismissing Mr. Engelbrecht and James River's joinder claims.[3]

Appellant subsequently filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[4]

Appellant raises the following issues for our review:

1. Did the [trial] court err in applying as a matter of law the Supreme Court decision in **State Farm Mutual Automobile**

_____

claims against him. Accordingly, neither Uber nor Mr. Engelbrecht are a party to the instant appeal.

[3] Ms. DeLong was named as an appellee in this matter based on the prior trial court order granting James River's motion for summary judgment, which was entered prior to the trial court's order dismissing all claims against Ms. DeLong. Ms. DeLong filed a brief in this matter; however, she notes that neither Appellant nor James River contest the entry of summary judgment dismissing the claims against Ms. DeLong; therefore, she does not take any position as to the merits of Appellant's appeal. **See** Ms. DeLong's Brief at 5.

[4] The trial court's Rule 1925(a) opinion incorporates the trial court's August 1, 2022 order and opinion by reference. **See** Trial Ct. Op., 2/27/24.

*Insurance Company v. Foster*, 889 A.2d 78 (Pa. 2005), to make a specific finding that [James River] in this matter was not required to show prejudice for non-reporting to the police, as such finding is in clear conflict of the Pennsylvania Supreme Court decisions in *Vanderhoff, Administratrix of the Estate of Forrester Vanderhoff, Deceased v. Harleysville Ins. Co.*, 78 A.3d 1060 (Pa. 2013), *Vanderhoff v. Harleysville Ins. Co.*, 997 A.2d 328 (Pa. 2010), [] all of which require a liberal interpretation of the Motor Vehicle Financial Responsibility Law relating to the definition and reporting requirements for an uninsured motorist claim: where both cases require a showing of prejudice by [Appellee]?

2. Did the [trial court] abuse its discretion in not accepting the facts pled in [Appellant's] complaint, [Appellant's] statement of facts in [her] memorandum of law in opposition to motion for summary judgment, specifically not accepting facts one (1) through ten (10), as stated therein as true facts, wherein [James River] was notified of the acts on November 20, 2017, seventeen (17) days after the accident in question, making the strict application of notification of the police and issue of prejudice paramount in this matter?

3. Did the [trial] court commit an error of law on the grounds that the [trial court] failed to interpret the Motor Vehicle Financial Responsibility Laws, and in particular the Uninsured Motorist Laws in contravention of the law, which requires the liberal and remedial interpretation as stated by the Supreme Court of Pennsylvania and the Superior Court of Pennsylvania?

4. Did the [trial] court err [] in relying upon *State Farm v. Foster*, 889 A.2d 78 (Pa. 2005), in finding no necessity for [James River] to prove prejudice in this uninsured matter based upon a non-reporting to law enforcement of the accident?

5. Did the [trial] court commit an error of law and/or an abuse of discretion requiring a guest passenger in an Uber[,] namely [Appellant], to actively question the driver of a vehicle that struck her in violation of Superior Court law?

6. Did the [trial] court commit a clear error of law in not following the Superior Court precedent set forth in *Meerzon v. Erie Insurance Company*, 551 A.2d 1106 (Pa. Super. 1988), in recognizing that where information provided at the scene of the accident is falsified and as a result of the misrepresentation,

despite best efforts at the scene and afterwards that a strict application of the definition of uninsured vehicle and the official reporting requirement should not have been waived?

7. Did the [trial] court commit a clear error of law in dismissing the uninsured motorist/bad faith case as pled in [Appellant's] first amended complaint . . . , all of which create genuine issues of material fact to be determined at the time of trial?

8. Did the [trial] court commit a clear error of law and/or an abuse of discretion in dismissing [Appellant's] claim of waiver as set forth on page 10 of [Appellant's trial] court brief; wherein the [trial] court specifically found that despite [James River] agreeing that the matter was an uninsured motorist claim, that said [James River] could change course during the litigation and contest such claim?

Appellant's Brief at 5-8 (formatting altered).

Appellant contends that the trial court erred as a matter of law when it granted James River's motion for summary judgment. *Id.* at 16-20. Specifically, Appellant argues that the trial court erroneously applied our Supreme Court's decision in *State Farm Mutual Automobile Ins. Co. v. Foster*, 889 A.2d 78 (Pa. 2005) (*State Farm*), and that this matter is instead controlled by our Supreme Court's more recent decisions in *Vanderhoff v. Harleysville Ins. Co.*, 997 A.2d 328 (Pa. 2010) (*Vanderhoff I*), and *Vanderhoff, v. Harleysville Ins. Co.*, 78 A.3d 1060 (Pa. 2013) (*Vanderhoff II*). Appellant's Brief at 16-20. Appellant further argues that because Mr. Engelbrecht was unable to provide Ms. DeLong's insurance information to James River, Appellant was unable to obtain Ms. DeLong's

- 6 -

information until after the statute of limitations[5] to file a negligence cause of action against Ms. DeLong had expired. *Id.* at 32.

> Our standard of review is *de novo* and our scope of review is plenary. Summary judgment is appropriate where there is no genuine issue of material fact as to a necessary element of a cause of action that can be established by discovery or expert report. Pa.R.C.P. 1035.2(1). In reviewing an order granting a motion for summary judgment, an appellate court must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party.

*Azaravich v. Wilkes-Barre Hosp. Co., LLC*, 318 A.3d 876, 881 (Pa. Super. 2024) (citation omitted). Summary judgment is also proper when a party is entitled to judgment as a matter of law. *Vivian v. Blank Rome, LLP*, 318 A.3d 890, 899 (Pa. Super. 2024).

We note that the crux of Appellant's claim is that the trial court erred in concluding that Appellant's failure to report the subject accident to the police is fatal to her uninsured motorist claims.

The Vehicle Code defines "uninsured motor vehicle" as any of the following:

> (1) A motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident.

> (2) A motor vehicle for which the insurance company denies coverage or the insurance company is or becomes involved in insolvency proceedings in any jurisdiction.

> (3) An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper

---

[5] The statute of limitations for a negligence cause of action is two years. 42 Pa.C.S. § 5524(2).

governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

75 Pa.C.S. § 1702.

This Court has held:

An unidentified vehicle can qualify as an uninsured vehicle only if an accident involving the unidentified vehicle has been reported to the police within thirty (30) days, or as soon thereafter as practical. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

***Jackson v. Pennsylvania Financial Responsibility Assigned Claims Plan***, 575 A.2d 626, 628 (Pa. Super. 1990) (*per curiam*) (citations omitted).

In **State Farm**, the plaintiff was a flagger at a highway construction site who was injured after jumping out of the way of an unidentified vehicle. **State Farm**, 889 A.2d at 79. The plaintiff initiated an uninsured motorist benefits claim under a policy issued by State Farm. **Id.** State Farm argued that the plaintiff was not entitled to uninsured motorist benefits "because she had failed to report the accident to the police or other governmental authority, as required by both the insurance policy and the Motor Vehicle Financial Responsibility Law (MVFRL)." **Id.** (citation omitted). The plaintiff took the position that "absent a showing of prejudice, State Farm could not deny coverage on this basis, particularly when it had not alleged prejudice." **Id.** at 80. The trial court entered judgment in favor of State Farm, finding that State

Farm had been prejudiced by the plaintiff's failure to notify the police of the accident. *Id.*

On appeal, our Supreme Court observed that the purpose of the MVFRL is to prevent fraudulent uninsured motorist claims by requiring that such incidents first be reported to the police. *Id.* at 82. The *State Farm* Court ultimately held that there is no prejudice requirement and that State Farm's denial of uninsured motorist coverage to the plaintiff was proper. *Id.*

In *Vanderhoff I*, our Supreme Court considered an uninsured motorist claim in which the plaintiff, who had been driving a vehicle owned by his employer, was involved in a motor vehicle accident in which the plaintiff rear-ended a vehicle driven by Ryan Piontkowski. *Vanderhoff I*, 997 A.2d at 329-30.

In addressing the appellant's claim on appeal, our Supreme Court explained:

> A critical factual dispute in this case involved whether Mr. Piontkowski stopped to avoid an unidentified car. If the unidentified car existed and caused the accident, the so-called "phantom vehicle" could constitute an uninsured motor vehicle, under the definition provided in § 1702 of the MVFRL, which could trigger [the plaintiff's] recovery of uninsured motorist benefits under the Harleysville insurance policy covering his employer's vehicle. The existence of the phantom vehicle, however, was disputed because, while [the plaintiff] testified to its existence, Mr. Piontkowski denied it. Moreover, [the plaintiff] apparently did not mention the phantom vehicle in the account he provided to the hospital after the accident, nor when filing his workers' compensation claim with Harleysville, which was also his employer's workers' compensation carrier. Additionally, the original police report did not reference a phantom vehicle. Instead, [the plaintiff] asserts that when he received the police

- 9 -

report several months after the accident he noticed the omission of the phantom vehicle and, in September 2002, requested that the Hanover Police Department correct the report. The request was denied.

Central to the issues before [our Supreme Court] is a dispute concerning whether [the plaintiff] notified Harleysville of the accident, including the existence of the phantom vehicle. Although [the plaintiff] filed a workers' compensation claim with Harleysville twenty days after the accident, he did not file a claim for uninsured motor vehicle benefits with Harleysville until June 14, 2002, over eight months after the October 2001 accident, despite a provision in the insurance contract requiring prompt notice and § 1702 of the MVFRL requiring notice within thirty days of the accident. [The plaintiff], however, asserted that he thought Harleysville had notice of the accident and was aware of the surrounding facts as a result of his workers' compensation claim, especially given that Harleysville told [the plaintiff] it was investigating the accident, and sent him to be examined by Harleysville's doctor. [The plaintiff] also assumed that the police report indicated the existence of the phantom vehicle, although, as noted above, it actually did not contain any such information.

*Id.* at 330 (footnote omitted).

Ultimately, the ***Vanderhoff I*** Court concluded that the case was distinguishable from the facts in ***State Farm*** and held that "before an insurer can deny uninsured motorist benefits resulting from an accident involving a phantom vehicle, the insurer must demonstrate prejudice **due to the failure of an insured to notify the insurer of the phantom vehicle accident**." *Id.* at 334-35 (emphasis added).

Several years later, in ***Vanderhoff II***, our Supreme Court held as follows:

Section 1702's notice requirement advances the primary goal of the MVFRL to keep automobile insurance affordable to the public by minimizing fraudulent claims and the attempted recovery of

- 10 -

benefits in cases where accidents were alleged to have been caused by phantom vehicles. Provision of prompt notice to both law enforcement and the insurance company enables those entities to promptly investigate the accident, thus making it less likely a claimant might fabricate a phantom vehicle's involvement to excuse his own neglect. Moreover, it is beyond dispute that, as time passes, memories fade and evidence disappears; therefore, providing prompt notice helps ensure the integrity of the evidence either in support of or discrediting the alleged phantom vehicle's involvement. This is not to say, however, that every case will be affected by notice delay in the same manner or that delay cannot be excused based on the facts of the case. The determination of prejudice is highly circumstance dependent.

Accordingly, we hold these cases must be addressed on a case-by-case basis wherein the court balances the extent and success of the insurer's investigation with the insured's reasons for the delay. The 30-day notice requirement is there for a reason. It is reasonable that insureds must alert the insurer within a month's time. While an insurer will not be permitted to deny coverage absent prejudice caused by an insured's delay in notice, showing such prejudice does not require proof of what the insurer would have found had timely notice been provided. To demand such evidence would result in a Mobius strip whereby, to show prejudice, the insurer would have to show through concrete evidence the evidence it was unable to uncover due to the untimely notice. While the insurer is always obligated to investigate the case such as it can, where an insured's delay results in an inability to thoroughly investigate the claim and thereby uncover relevant facts, prejudice is established. Handling these cases in this manner promotes prompt notice and advances MVFRL goals while encouraging insurers to investigate phantom vehicle claims.

*Vanderhoff II*, 78 A.3d at 1066-67 (citations omitted and some formatting altered).

Here, the trial court concluded that **State Farm** applied to the instant case, and that an insurance carrier is not required to establish prejudice in cases where a plaintiff fails to report a car accident to law enforcement. **See**

- 11 -

Trial Ct. Op., 8/1/22, at 8 (citing **State Farm**, 889 A.2d at 82). As stated above, it is well settled that the intent of Section 1702 of the Vehicles Code is to "keep[] automobile insurance affordable to the public by minimizing fraudulent claims and the attempted recovery of benefits in cases where accidents were alleged to have been caused by phantom vehicles." **Vanderhoff II**, 78 A.3d at 1066-67 (citing **State Farm**, 889 A.2d at 81; **Jackson**, 575 A.2d at 628 n.2).

However, following our review of the record, we conclude that the instant case is distinguishable from **State Farm**, **Vanderhoff I**, and **Vanderhoff II**. In those cases, the driver of the vehicle giving rise to the uninsured motorist claim was never identified. Here, the driver of the striking vehicle that rear-ended the Uber vehicle was identified as Ms. DeLong. Moreover, it is undisputed that Ms. DeLong and Mr. Engelbrecht, the driver of the Uber vehicle, promptly exchanged information at the scene of the accident, but that information was not shared with Appellant, the Uber vehicle passenger. **See** N.T. Mr. Engelbrecht Dep., 7/29/21, at 12, 38-39; N.T. Ms. DeLong Dep., 7/29/21, at 20, 23-24. Accordingly, this is not a case involving a "phantom vehicle" as contemplated by Section 1702, **State Farm**, and the **Vanderhoff** cases. To the contrary, although Ms. Delong's identity was not known to Appellant, that information was known to Mr. Engelbrecht and was in his possession since the date of the accident. Further, Mr. Englebrecht's deposition testimony established that he did not respond to James River's requests, in its capacity as insurer for his Uber vehicle, for the striking driver's

information for two years, despite numerous emails and telephone calls. *See* N.T. Mr. Engelbrecht Dep., 7/29/21, at 12, 38-39; N.T. Ms. DeLong Dep., 7/29/21, at 20, 23-24.

Based on these facts, we conclude that the absence of a police report is not fatal to Appellant's uninsured motorist claim. First, we note that as a passenger in Mr. Engelbrecht's Uber vehicle, Appellant did not have a duty to obtain Ms. DeLong's identity. Under the Motor Vehicle Code, in any accident involving injury or death to any person or damage to a vehicle driven by any person, the drivers of the involved vehicles are required to exchange certain information, and that duty extends to occupants only in cases where driver is physically unable to do so. *See* 75 Pa.C.S. § 3744(a), (c); *see also* 75 Pa.C.S. § 3746(a)(1)-(2) (requiring that the **driver** of a vehicle involved in an accident to notify the police in cases where injury or death occur or there is damage to any vehicle such that the vehicle is undrivable and requires towing); 75 Pa.C.S. § 3746(b) (stating that an occupant of a vehicle is only required to notify the police of a vehicle accident in cases where the driver is "physically incapable" of making such a notice).

Additionally, the record reflects that while Appellant did not ask for Ms. DeLong's information immediately after the accident, such information was likewise never offered to her, despite the fact that James River's insured driver, Mr. Engelbrecht, had Ms. DeLong's identification information in his possession since the date of the accident—both through his photograph of Ms. DeLong's insurance card and through a cashed check made out to him from

Ms. DeLong to pay for the damages to his vehicle. *See* N.T. Mr. Engelbrecht Dep., 7/29/21, at 12, 38-39, 50-51; N.T. Ms. DeLong Dep., 7/29/21, at 20, 23-24. Although Appellant repeatedly attempted to obtain Ms. DeLong's insurance information from Mr. Engelbrecht, she was not able to obtain it until after the statute of limitations expired.

Therefore, we find that the trial court erred as a matter of law when it granted James River's motion for summary judgment on the basis that Appellant, a passenger, failed to report the subject accident to the police. On this record, James River has failed to establish that it is entitled to judgment as a matter of law and genuine issues of material fact exist. *See Vivian*, 318 A.3d at 899. Accordingly, based on the specific circumstances of this case, on this record, we find that the trial court erred when it concluded that Appellant's failure to report the subject motor vehicle accident to the police was fatal to her claim as a passenger, when Ms. DeLong's identity, the driver of the striking vehicle, was known by Mr. Englebrecht, the driver of Appellant's Uber vehicle. Notably, despite numerous phone calls and emails, James River, the Uber vehicle insurer, was not able to obtain Ms. Delong's contact information from Mr. Englebrecht, until two years after the accident. Only after that point was the contact information shared with Appellant. For these reasons triable issues of fact exist, therefore, we remand to the trial court for further proceedings.[6]

_____

[6] In light of our disposition, we need not address each issue Appellant raises individually.

- 14 -

Judgment vacated.  Order reversed.  Jurisdiction relinquished.

Judge Sullivan joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2024