78 A.3d 1060

Lisa **VANDERHOFF**, Administratrix of the Estate
of Forester Vanderhoff, Deceased, Appellant

v.

**HARLEYSVILLE INSURANCE COMPANY**, Appellee.

Supreme Court of Pennsylvania.

Argued May 8, 2013.

Decided Oct. 30, 2013.

430

Brian C. Corcoran, Esq., for Forester Vanderhoff.

James C. Haggerty, Esq., Haggerty, Goldberg, Schleifer & Kupersmith, P.C., John Jacob Hare, Esq., Richard Bruce Morrison, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, P.C., Philadelphia, for Harleysville Insurance Company.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## *OPINION*

Justice EAKIN.

This is an appeal from the order of the Superior Court reversing the order of the Court of Common Pleas of Luzerne County, which held appellee Harleysville Insurance Company did not suffer prejudice as a result of appellant's failure to report a phantom vehicle within the 30–day time requirement established by the Motor Vehicle Financial Responsibility Law (MVFRL).[1] Upon review, we affirm the Superior Court decision.

This case involves an uninsured motorist benefits claim filed in connection with injuries allegedly sustained by appellant in an October 4, 2001, motor vehicle accident. Appellant was driving a truck insured by Harleysville when he rear-ended a vehicle driven by Ryan Piontkowski, who was waiting to make a left-hand turn. The police were summoned, and the investigating officer spoke to appellant and Piontkowski; the police report contained no mention of a phantom vehicle being involved in the accident. Appellant later reported the accident to his employer, explaining he momentarily took his eyes off the road, and when he looked again, a vehicle was stopped

---

1. 75 Pa.C.S. § 1702 (emphasis added) (defining "Uninsured motor vehicle," in part, as "An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and *the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.*").

in front of him; he was unable to stop and rear-ended the vehicle. No phantom vehicle was mentioned. Twenty days later, appellant completed a written Workers' Compensation Employee's Statement[2] in which he reported the accident occurred due to Piontkowski stopping suddenly in front of him. Again, no phantom vehicle was reported.

Over eight months later, on June 14, 2002, appellant filed a claim for uninsured motorist benefits, alleging the accident was caused by a phantom vehicle pulling out in front of Piontkowski, causing him to stop suddenly. Harleysville denied appellant's claim and sought a declaratory judgment that he was not entitled to uninsured motorist benefits. At a non jury trial, Harleysville contended the phantom vehicle did not exist, and regardless, appellant failed to comply with the statutory requirement to notify Harleysville of the phantom vehicle within 30 days. The trial court determined the phantom vehicle existed, and appellant had reported it to the investigating officer at the scene and to Harleysville "as soon as practicable," as required by 75 Pa.C.S. § 1702. Trial Court Order, 11/17/04.

Harleysville appealed to the Superior Court, which reversed holding the trial court's determination appellant gave Harleysville timely notice of the phantom vehicle was unsupported by the record as the earliest evidence of appellant providing notice was during a February, 2002 independent medical examination. *Vanderhoff v. Harleysville*, No. 1984 MDA 2004, unpublished memorandum at 7–9, 898 A.2d 1143 (Pa.Super. filed March 1, 2006). Additionally, the Superior Court rejected appellant's counter-argument that, under *Brakeman v. Potomac Insurance Company*, 472 Pa. 66, 371 A.2d 193 (1977), even if he failed to provide proper notice to Harleysville, it could not deny him benefits as a result absent demonstrating it suffered prejudice. The court quoted our decision in *State Farm Mutual Automobile Insurance Company v. Foster*, 585 Pa. 529, 889 A.2d 78 (2005), " 'that *Brakeman's* prejudice requirement is inapplicable to the notice provision of § 1702.' " *Vanderhoff*, at 9 (quoting *Foster*, at 82).

2. Harleysville is also the Workers' Compensation insurer.

We granted allocatur to address: "Whether an insurance carrier should be required to prove prejudice relative to the late reporting to the carrier of an accident involving an unidentified vehicle when such accident was timely reported to law enforcement officials[.]" *Vanderhoff v. Harleysville Insurance Company*, 590 Pa. 10, 911 A.2d 917 (2006) (*per curiam*). Following argument, we distinguished *Foster* and held, consistent with *Brakeman*, "before an insurer can deny uninsured motorist benefits resulting from an accident involving a phantom vehicle, the insurer must demonstrate prejudice due to the failure of an insured to notify the insurer of the phantom vehicle accident." *Vanderhoff v. Harleysville Insurance Company (Vanderhoff I)*, 606 Pa. 272, 997 A.2d 328, 335 (2010). We remanded to the trial court for a determination of whether Harleysville was prejudiced by appellant's late notice.

On remand, in lieu of an opinion analyzing the facts of the case and applicable law, the trial court simply twice filed the following statement, first as an order and, following the filing of a notice of appeal, again as an opinion, adopting appellant's argument:

This matter comes before the Court on the directive of the Supreme Court that Defendant, Harleysville Mutual Insurance Company, in order to deny Plaintiff's claim, must prove actual prejudice to it by reason of Plaintiff's failure to notify it of a "phantom vehicle" (under Plaintiff's uninsured motorist coverage) in a timely manner. The Defendant produced numerous witnesses who opined that had they had an opportunity to investigate sooner, the investigation would have been more complete and effective as witnesses would not disappear and evidence would not disappear.

The Plaintiff, however, while not contesting this claim, takes the position that the Defendant could not show any prejudice in that it was unable to show the result would have been any different even with such a timely investigation.

If delay alone leads to legal prejudice to an insurer, the delay is all the insurer would ever have to show. This could mean thirty-one (31) days after the accident; sixty (60)

days, or two years. No court could determine what would have been found had the investigation been so completed.

If the Defendant's argument is to be enforced, there would be no necessity for showing of prejudice because it would be prejudice per se every time there is a delay.

Under the circumstances the Court finds that the Defendant did not meet its burden of proving actual prejudice in this case and Plaintiff's action is not barred by the untimely notice.

Trial Court Order, 8/24/10, at 1–2; Trial Court Opinion, 1/28/11, at 1–2.

Harleysville appealed, and the Superior Court reversed finding the trial court's rationale "constitute[d] a clear abuse of discretion, as it [did] not comport with reason." *Vanderhoff v. Harleysville Insurance Company*, 40 A.3d 744, 747 (Pa.Super.2012). Further, the court concluded:

The entire justification for the requirement of a timely report of a[ phantom] vehicle to an insurer is to allow the insurer to investigate the accident to discover evidence. It is nearly axiomatic that the insurer cannot know what evidence it might discover in such an investigation. In fact, if the insurer could establish with certainty what evidence it would have discovered, it would, by definition, not be prejudiced by the lack of timely notice.

*Id.*

The court found persuasive Harleysville's witness testimony regarding the investigative measures it would have employed and the evidence such investigation may have uncovered had appellant provided timely notice of the alleged phantom vehicle. Those measures included hiring an investigator to canvass the scene within days of the accident, obtaining counsel to direct an investigation and develop a defense, employing an accident reconstruction list to certify the scene, securing schematics and scene photographs, interviewing the investigating officer when his memory of the accident was fresh, requesting 911 tapes, and tracking down witnesses. N.T. Trial, 8/24/10, at 22–23, 37–41. Although several of these measures were

taken upon Harleysville receiving notice of the alleged phantom vehicle, witnesses opined their effectiveness in aiding the investigation was significantly diminished by the delay due to the short-lived nature of prime evidence—*e.g.,* tire marks and witness availability and memory. *Id.,* at 14 ("[W]hen there's a phantom vehicle being alleged, you have to get out there as soon as possible to get your investigation done."); *id.,* at 22 (due to late notice, "[t]hat accident was lost in obtaining witnesses that could have been there"); *id.,* at 29–30 (911 tapes destroyed after 30 days; may have found additional witnesses if given earlier notice); *id.,* at 33 (delay means "evidence disappears"); *id.,* at 35 (no additional witnesses "because [they] didn't have the opportunity to go out and look for them"); *id.,* at 41 (phantom vehicle cases very difficult because trying to prove negative; "Memory is very important in this thing. . . . [A] person's memory is much fresher a couple days after the accident than almost a year after the accident. Police officers get involved much easier, much quicker right after the accident because things are fresh and they have the opportunity to do supplemental reports than a year later when their memories are not as fresh and they don't want to even get into supplemental reports."); *id.,* at 42 ("[T]he importance to determining [whether a phantom vehicle was involved] is quick, immediate investigation using a team effort through investigators, reconstruction people, to try and track down any human being who is out there who may have seen it[.]"); *id.,* at 48 (In "cases on phantom vehicles, you have to attack the phantom vehicle from day one and see if there is any evidence to support it. . . ."); *id.,* at 72 ("[T]he earlier the better to look for things like debris, marks on the roadway, damage, availability to look at vehicles. The longer you wait, then the less opportunity you have for that data."). In particular, the investigator assigned to appellant's case testified timing of the phantom vehicle notice impacts the scope of her investigation in that, when notice is timely received, it is more likely a canvass of the area will procure witnesses, physical evidence on the roadway is more likely to be available, she is able to more effectively interview the investigating officer, and the insured's memory is more likely to be accu-

rate. *Id.*, at 53–57. By the time notice was received in this case, there was nothing left on the roadway in terms of physical evidence from the accident, and conducting a canvass of the area for additional witnesses was deemed pointless; therefore, her investigation was limited to the statements of appellant, his employer, Piontkowski, and the investigating officer, all of which contained no reference to a phantom vehicle. *See id.*, at 61–62. Thus, the court concluded, "Under these specific circumstances, ... the trial court erred in requiring Harleysville to establish conclusively what evidence a timely investigation would have discovered." *Vanderhoff,* at 748.

Appellant sought this Court's review, and we granted allocatur to address the following issues:

(1) What constitutes "actual prejudice" to relieve an insurance company of its obligation to pay insurance benefits to an insured?

(2) Should "actual prejudice" involve proof by an insurance carrier that it suffered a real material impairment of its ability to investigate and defend an uninsured claim?

(3) What constitutes a reasonable basis for a trial court finding that prejudice exists in a late report of a phantom vehicle?

*Vanderhoff v. Harleysville Insurance Company,* 618 Pa. 174, 55 A.3d 1056 (2012) (*per curiam*).[3] Although presented as

3. Although appellant and the trial court present "actual prejudice" as a term of art required to be proven by an insurance company in phantom vehicle cases, such has no basis in *Vanderhoff I,* which established the prejudice requirement. *See Vanderhoff I,* at 335 ("[W]e conclude that before an insurer can deny uninsured motorist benefits resulting from an accident involving a phantom vehicle, the insurer must demonstrate prejudice due to the failure of an insured to notify the insurer of the phantom vehicle accident."). While appellant attempts to support his assertion that actual prejudice is required with a litany of federal court cases, this Court is not bound thereby. *See* Appellant's Brief, at 7–9 (citing *Brethren Mutual Insurance Company v. Velez,* 2008 WL 2444505, at *1 (M.D.Pa. June 13, 2008) (denying summary judgment because failed to show late notice "resulted in actual prejudice"); *Harrisburg Area Community College v. Pacific Employers Insurance Company,* 682 F.Supp. 805 (M.D.Pa.1988) (interpreting *Brakeman* to require "Defendant must show not only the loss of a substantial defense opportunity

three distinct issues, each merely constitutes a re-phrased challenge to the Superior Court's finding Harleysville suffered prejudice from appellant's untimely notice.

Appellant argues *Brakeman* controls this case and, in order to show prejudice, "[t]he insurance carrier must point to concrete evidence or witnesses that are no longer available due to the late notice" and "must show the loss of a substantial defense opportunity and the likelihood of success in defending liability and damages[.]" *Id.*, at 1064. Since "Harleysville did not prove at trial that any specific facts changed so as to constitute material prejudice[,]" appellant contends it cannot deny coverage. *Id.*, at 1067. Conversely, Harleysville promotes the case-by-case approach used by the Superior Court wherein breach of the phantom vehicle notice requirement constitutes a defense to an uninsured motorist claim "where the insurer shows that its ability to investigate the [phantom vehicle] claim was impaired by that late notice in the context of the accident in question along with the extent of and explanation for that delay." Appellee's Brief, at 11. Harleysville contends the evidence it presented at trial, detailing the manner in which its investigation was hampered by appellant's late notice and the importance of prompt investigation in phantom vehicle claims arising from accidents occurring in high traffic areas, was sufficient to meet this standard.

In reviewing a declaratory judgment, we are limited to determining whether the trial court committed a clear abuse of discretion or error of law. *Vernon Township Volunteer Fire Department, Inc. v. Connor*, 579 Pa. 364, 855 A.2d 873, 879 (2004) (citation omitted). "An appellate court may not substitute its judgment for that of the trial court if the determination of the trial court is supported by competent evidence." *Id.* (citation omitted). As the issue in this case is

but also a likelihood of success in defending liability or damages if that opportunity had been available." (citing *Trustees of the University of Pennsylvania v. Lexington Insurance Co.*, 815 F.2d 890 (3d Cir.1987) (citing *Morales v. National Grange Mutual Insurance Co.*, 176 N.J.Super. 347, 423 A.2d 325 (Law Div.1980) while interpreting *Brakeman* )))). Accordingly, we will address appellant's issues as questioning what constitutes prejudice.

a question of law, our standard of review is de novo and our scope of review is plenary. *Generette v. Donegal Mutual Insurance Company*, 598 Pa. 505, 957 A.2d 1180, 1189 (2008) (citation omitted).

In *Brakeman*, we determined, prior to the enactment of the MVFRL, an insurance company intending to deny coverage based upon lack of notice required by its policy had to demonstrate prejudice resulting therefrom because, otherwise, forfeiture would result as the denial of purchased coverage would arise from a non-negotiated term, dictated by the insurance company's policy. *Brakeman*, at 197–98 (citations omitted). Thus, we held, "where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, [it must] prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position." *Id.*, at 198. We further noted:

> Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.

*Id.*, at 197. In *Vanderhoff I*, we upheld the continued applicability of *Brakeman's* prejudice requirement notwithstanding the passage of § 1702, which specifically provides a claimant seeking to recover uninsured motorist benefits arising from a phantom vehicle accident must notify his insurer within 30 days of the accident without mention of prejudice. *Vanderhoff I*, at 333–34 (citing 75 Pa.C.S. § 1702). While our case law clearly requires an insurer to show prejudice in such cases, it does not delineate how an insurer proves it was prejudiced or what exactly constitutes prejudice. See *Brakeman*, at 198 ("We recognize that prejudice is a difficult matter to prove affirmatively . . . .").

Since *Brakeman*, various Pennsylvania courts have dealt with notice and prejudice in the insurance context. For

example, in *Metal Bank of America, Inc. v. Insurance Company of North America,* 360 Pa.Super. 350, 520 A.2d 493 (1987), the Superior Court held the insurance carriers were prejudiced by the claimant's failure to provide notice of an oil spill until ten years after the spill and two years into the litigation. *Id.,* at 498. The court determined:

> [T]he reason for timely notice to the insurer is to enable it to gain early control of the proceedings and to give it an opportunity to investigate and acquire information about the case. All of this was denied to the insurers [at the time they were notified], as the facts were stale and the litigation had been in progress for some two years.

*Id.* Further, the court found, not only were the insurers denied the opportunity to defend claims against the claimant, but "[i]t also cannot be disputed that evidence has been dissipated and disappeared and that the passage of time has resulted in the unavailability of witnesses and the fading of memories." *Id.,* at 498 n. 4 (citation omitted). Lastly, the court concluded "the insurers were not given an opportunity to make their own investigation of the many problems and this was prejudicial." *Id.,* at 500. Although *Metal Bank* is factually distinguishable as a complex environmental litigation with highly sophisticated insureds, we agree with these general precepts regarding the impact of delay on investigation.

In *Frankford Candy & Chocolate Company, Inc. v. Valiant Insurance Company,* 2006 WL 224237 (C.P. Philadelphia Cnty. January 24, 2006), the insurer denied coverage of a property damage claim filed two years after the failure of roof air conditioning units resulted in damage to the insured's chocolate Easter bunnies. The trial court held the insurer proved it was prejudiced by the late notice in connection with the insured air conditioning units because those units had since been discarded, thereby preventing the insurer from investigating whether their failure was covered under the policy. *Id.,* at *3. However, the court found no prejudice ensued regarding the damaged Easter bunnies because a sample of the damaged product remained available for inspection. *Id.*

██ Section 1702's notice requirement advances the primary goal of the MVFRL to "keep[ ] automobile insurance affordable to the public by minimizing fraudulent claims 'and the attempted recovery of benefits in cases where accidents were alleged to have been caused by phantom vehicles.' " *Foster*, at 81 (internal quotations and further citation omitted) (quoting *Jackson v. Pennsylvania Financial Responsibility Assigned Claims Plan*, 394 Pa.Super. 274, 575 A.2d 626, 628 n. 2 (1990)). Provision of prompt notice to both law enforcement and the insurance company enables those entities to promptly investigate the accident, thus making it less likely a claimant might fabricate a phantom vehicle's involvement to excuse his own neglect. Moreover, it is beyond dispute that, as time passes, memories fade and evidence disappears; therefore, providing prompt notice helps ensure the integrity of the evidence either in support of or discrediting the alleged phantom vehicle's involvement. This is not to say, however, that every case will be affected by notice delay in the same manner or that delay cannot be excused based on the facts of the case. The determination of prejudice is highly "circumstance dependent." *Nationwide Insurance Company v. Schneider*, 599 Pa. 131, 960 A.2d 442, 452 (2008).

██ Accordingly, we hold these cases must be addressed on a case-by-case basis wherein the court balances the extent and success of the insurer's investigation with the insured's reasons for the delay. The 30–day notice requirement is there for a reason. It is reasonable that insureds must alert the insurer within a month's time. While an insurer will not be permitted to deny coverage absent prejudice caused by an insured's delay in notice, showing such prejudice does not require proof of what the insurer would have found had timely notice been provided. To demand such evidence would result in a Mobius strip whereby, to show prejudice, the insurer would have to show through concrete evidence the evidence it was unable to uncover due to the untimely notice. While the insurer is always obligated to investigate the case such as it can, where an insured's delay results in an inability to thoroughly investigate the claim and thereby uncover relevant

facts, prejudice is established. Handling these cases in this manner promotes prompt notice and advances MVFRL goals while encouraging insurers to investigate phantom vehicle claims.

Accordingly, the Superior Court decision is affirmed. Jurisdiction relinquished.

Chief Justice CASTILLE and Justices SAYLOR and McCAFFERY join the opinion.

Justice TODD joins the majority opinion, except for the commentary regarding cost containment on page 438–40, 78 A.3d page 1066–67, as she shares the concerns expressed by Justice BAER in footnote 1 of his concurring opinion.

Mr. Justice BAER files a concurring opinion.

Justice BAER, concurring.

I concur in the result. The Majority Opinion accurately sets forth the tortured path of this case and properly rejects the trial court's implication that, to prove prejudice resulting from delayed notice of a phantom vehicle, an insurance company must demonstrate the evidence it would have obtained if notice had been promptly provided. I further agree with the Majority's general proposition that "these cases must be addressed on a case-by-case basis wherein the court balances the extent and success of the insurer's investigation with the insured's reasons for the delay." Maj. Op. at 440, 78 A.3d at 1067. I write separately, however, because I view our grant of review in this case as an opportunity to provide specific guidance regarding how an insurance company can demonstrate prejudice resulting from an insured's failure to comply with the notice requirement of 75 Pa.C.S. § 1702 (defining uninsured motor vehicle).

As did the author of the current Majority Opinion, Defendant Harleysville Insurance Co. presented arguments opposing the imposition of any prejudice requirement in *Vanderhoff v. Harleysville Insurance Company*, 606 Pa. 272, 997 A.2d 328, 335 (2010) (Eakin, J., dissenting) (*Vanderhoff I*). As

Harleysville was unable to convince a majority of this Court to impose a *per se* prejudice standard in *Vanderhoff I*, it now presents balanced factors for Pennsylvania courts to employ when considering prejudice. These factors bridge the gap between the extreme positions of the *per se* prejudice that Harleysville originally suggested in *Vanderhoff I* and the trial court's near impossible requirement that the insurer demonstrate what would have been found if proper notice had been given.

I would adopt Harleysville's suggested test that the prejudice requirement can be met if "the insurer provides reasonable proof that its ability to investigate the accident was impaired in the context of both the accident and the delay at issue in the case." Harleysville Brief at 13. This broad inquiry supports the purpose of the notice requirement, which is to allow the insurer to investigate the accident to determine whether there is a legitimate claim of a phantom vehicle and to make an informed decision whether to cover the insured's claims or to reject them as unfounded. Harleysville articulates the following factors for courts to consider in applying this test.

First, to determine whether the insurer was prejudiced as a result of the late notice, courts should account for the evidence available to the insurer at the time notice is finally given from the accident itself. We may consider whether the insurance company has access to contemporaneous statements of disinterested eyewitnesses in police reports, video of the accident, or physical evidence that can either confirm or disprove the existence of the phantom vehicle. For example, if eyewitnesses blame the accident on another car, surveillance video indisputably confirms the existence of the other car, or paint marks match the insured's description of the phantom vehicle, an insurance company has less reason to question the existence of the phantom vehicle and thus less need to pursue its own investigation. Moreover, there is a compelling argument that if an insurance company was previously aware of such evidence, it would *de facto* place the insurance company on notice of the existence of a currently unidentified vehicle's

involvement in the accident, triggering its right to seek further information. Conversely, as in this case, if there are no eyewitnesses that mention the phantom vehicle and no physical evidence corroborating the insured's claims, the insurance company may well suffer substantial prejudice if it is not provided timely notice to allow it to canvas the area for eyewitnesses and physical evidence or perform accident reconstruction to determine the legitimacy of the insured's claims.

Similarly, courts should consider the details of the delay in notification. Obviously, courts must factor in the length of the delay. An insurer that receives notice one day after the expiration of the statutory thirty-day notification period will be hard pressed to establish prejudice just as an insured who does not give notice until a year after the accident may find it difficult to argue lack of prejudice, even recognizing that the insurer has the burden of demonstrating prejudice. *Vanderhoff I*, 997 A.2d at 335.

A court should also take into account the justification for the delay. An insurer may legitimately have reason to question the existence of a phantom vehicle, and thus suffer substantial prejudice from its inability to investigate the claims, if the insured's delay in providing notice is unexplained. For example, in the case at bar, red flags are raised because the insured failed to mention the existence of the alleged phantom vehicle in several of his descriptions of the accident, without any explanation for the significant delay in providing notice. In contrast, one can imagine the hypothetical injured-insured who wakes up from a comma and immediately blames the accident on a phantom vehicle with detailed explanation. In such a case, the insurer will have less reason to suspect insurance fraud and, perhaps, less need to pursue further investigation. In accordance with Harleysville's suggestion, the reason for the delay may factor into a court's analysis.

Accordingly, while I concur in the result of the Majority Opinion, I write separately to provide guidance to the bench and bar on the question of how an insurer can demonstrate prejudice resulting from an insured's failure to provide notice of the existence of a phantom vehicle within the thirty-day

statutory notification period. As stated, in my view, courts should consider information relating to the accident, including the availability of eyewitness statements and physical evidence, as well as information relating to the delay, including the length and reason for the delay.[1]

1. Additionally, I question whether the Majority Opinion's statement that the "primary goal" of the Motor Vehicle Financial Responsibility Law (MVFRL) is to "keep automobile insurance affordable" adds anything to a court's review of disputes between insurers and insured in 2013. Maj. Op. at 438–40, 78 A.3d at 1066–67. I have previously "call[ed] for advocates and the judiciary to cease their continued reliance on the unthinking perpetuation of the long-ameliorated concern for cost containment." *Williams v. GEICO Government Employees Ins. Co.*, 613 Pa. 113, 32 A.3d 1195, 1211 (2011). Moreover, a majority of justices have recently recognized that cost containment does not trump all other public policies. *See Heller v. Pa. League of Cities and Municipalities,* 613 Pa. 143, 32 A.3d 1213, 1222 (2011) ("Despite our repeated affirmance of the cost containment policy underlying the MVFRL, we have cautioned that it has limits"); *Williams,* 32 A.3d at 1210 (2011) (Saylor, J. concurring) ("I would also once and for all abandon the rubric that cost containment was the overarching policy concern of the [MVFRL], since the act clearly retained the core remedial objectives of the prior regulatory scheme."). Accordingly, I respectfully reject the Majority's view of the policy of cost-containment as remaining pertinent to judicial interpretation of the MVFRL.