J-A26024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ROX-ANN REIFER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WESTPORT INSURANCE COMPANY, | |
| Appellee | No. 321 MDA 2015 |

Appeal from the Order Entered January 20, 2015
in the Court of Common Pleas of Lackawanna County
Civil Division at No.: 2012-01410

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 20, 2015**

Appellant, Rox-Ann Reifer, appeals from the order sustaining the preliminary objections of Appellee, Westport Insurance Company, and dismissing her complaint with prejudice. We affirm.

The trial court succinctly set forth the background of this case in its January 20, 2015 opinion.

> This case originally stems from a legal malpractice lawsuit commenced by [Appellant] against Donald Russo ("Russo"). [Appellant] originally filed a writ of summons against Russo on March 18, 2008 and served Russo with the writ of summons the following day. However, Russo did not report the writ to [Appellee, his legal malpractice insurer]. On December 29, 2008, [Appellant] filed a complaint against Russo for legal malpractice, and served a copy on Russo. Russo reported the complaint to [Appellee], but his policy with [Appellee] had

_____

[*] Retired Senior Judge assigned to the Superior Court.

expired on August 15, 2008. Therefore, because the report was [made] sixty days after the expiration of the [policy], [Appellee] denied coverage for the claim.

On February 11, 2011, [Appellant] and Russo reached a settlement, with Russo admitting liability but leaving a jury to decide the amount of damages to be awarded and assigning his rights under the policy to [Appellant]. A jury awarded [Appellant] a judgment against Russo totaling over $4 million dollars [for his negligent representation of her in an employment related action].

On March 1, 2012, [Appellant] filed [a declaratory judgment] action [against Appellee] in [the trial court]. [Appellee] removed the action to federal district court based on diversity jurisdiction. The federal district court remanded the case back to [the trial c]ourt based on its discretionary authority to decline jurisdiction over actions seeking a declaratory judgment.

On remand, [Appellee] filed [p]reliminary [o]bjections to [Appellant's c]omplaint, seeking to have [Appellant's c]omplaint dismissed due to the legal insufficiency of the pleading based on the fact that [Appellant's] underlying malpractice claim was not reported to [Appellee] during the policy period or within sixty (60) days thereafter as required by the policy agreement. . . .

(Trial Court Opinion, 1/20/15, at 1-2).

On January 20, 2015, the trial court sustained Appellee's preliminary objections, and dismissed Appellant's complaint with prejudice. Appellant timely appealed on February 13, 2015.[1] On August 7, 2015, Appellant filed an application for relief entitled "Appellant's Response to [Appellee's]

---

[1] The trial court did not order Appellant to file a Rule 1925(b) statement of errors, and did not file a Rule 1925(a) opinion. *See* Pa.R.A.P. 1925.

Demand to Withdraw an Argument in her Reply Brief," which we deferred until disposition of her appeal in a September 4, 2014 *per curiam* order.

Appellant raises three questions for our review:

I.    Did the Supreme Court promulgate [Rule of Professional Conduct] 1.4(c) to protect consumers of legal services[?]

II.    Is **Brakeman**'s[2] and **Vanderhoff**'s[3] notice-prejudice rule the best way to effectuate the Supreme Court's intent in promulgating [Rule of Professional Conduct] 1.4(c)[?]

III.    Do public policy considerations support reversal of the [trial] court's decision [sic] and the application to their notice prejudice rule[?]

(Appellant's Brief, at 4) (most capitalization omitted).

Although her questions involved are not properly phrased as such, a review of Appellant's brief as a whole reveals that she claims the trial court erred in sustaining Appellee's preliminary objections on the basis of the insurance policy's unambiguous terms without interpreting it pursuant to her arguments. (**See id.** at 4, 13). In effect, Appellant raises one issue, and advances three arguments in support of it. (**See id.** at 13, 16-37).

We first consider whether the trial court erred in sustaining Appellee's preliminary objections on the basis of the insurance contract's terms. (**See** Trial Ct. Op., at 3).

_____

[2] **Brakeman v. Potomac Ins. Co.**, 371 A.2d 193 (Pa. 1977).

[3] **Vanderhoff v. Harleysville Ins. Co.**, 997 A.2d 328 (Pa. 2010). **Vanderhoff** applied the rule announced in **Brakeman**. **See id.** at 333-34.

Our standard of review of this matter is well-settled:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012) (citation omitted).

> The interpretation of an insurance contract is a question of law. The standard of review of questions of law is *de novo,* and the scope of review is plenary. Thus, in interpreting a contract, this Court need not defer to the trial court.
>
> \* \* \*
>
> When the language of a policy is clear and unambiguous, the court is bound to give effect to the policy and cannot interpret the policy to mean anything other than what it says. The goal [of the Court in] interpreting an insurance policy . . . is to determine the intent of the parties as manifested by the language of the policy. **Disputes over coverage must be resolved only by reference to the [ ] provisions of the policy itself.**

***Clarke v. MMG Ins. Co.***, 100 A.3d 271, 275 (Pa. Super. 2014), *appeal denied*, 117 A.3d 294 (Pa. 2015) (citations and quotation marks omitted) (emphasis added).

In this case, the language of the professional liability policy expressly provided that the policy period was from August 15, 2007 to August 15, 2008. (***See*** Customized Practice Coverage Declarations, 8/29/07, at 1). Pursuant to Russo's liability coverage:

> [Appellee] shall pay on behalf of [Russo] all LOSS . . . which [Russo] becomes legally obligated to pay as a result of CLAIMS first made against [Russo] during the POLICY PERIOD and **reported to [Appellee] in writing during the POLICY PERIOD or within sixty (60) days thereafter**[.]

(Professional Liability Coverage, at 1 ¶ 1A) (emphasis added).[4]

Therefore, because "the language . . . is clear and unambiguous, the court [was] bound to give effect to [it] and [could not] interpret the policy to mean anything other than what it says." ***Clarke***, ***supra*** at 275 (citation and internal quotation marks omitted). In fact, Appellant does not argue that the policy's terms were ambiguous or that Russo provided Appellee with timely notice. (***See*** Appellant's Brief, at 16-34). She actually concedes that

---

[4] This type of insurance policy is a claims-made policy, which "protects the holder **only against claims made during the life of the policy**." ***Consulting Engineers, Inc. v. Ins. Co. of N. Am.***, 710 A.2d 82, 85 (Pa. Super. 1998), *affirmed*, 743 A.2d 911 (Pa. 2000) (citation omitted) (emphasis added).

Russo failed to provide timely notice of her malpractice claim to Appellee. (**See id.** at 13).

Hence, we conclude that the trial court properly sustained Appellee's preliminary objections on the basis of the insurance contract's clear and unambiguous language and found that Appellant's declaratory judgment action is legally insufficient where, pursuant to the policy's terms, Appellee is not liable. (**See** Trial Ct. Op., at 3); **see also Clarke**, **supra** at 275; **Richmond**, **supra** at 783. Appellant's appeal of the trial court's order sustaining Appellee's preliminary objections and dismissing her complaint with prejudice does not merit relief.

Moreover, we are not legally persuaded by the arguments Appellant makes in support of her "issues." (**See** Appellant's Brief, at 4, 16-34).

In her first argument, Appellant maintains that the claims-made policy contravenes the Pennsylvania Supreme Court's intent to protect consumers with the promulgation of Pennsylvania Rule of Professional Conduct 1.4(c).[5]

_____

[5] Pennsylvania Rule of Professional Conduct 1.4(c) provides:

> A lawyer in private practice shall inform a new client in writing if the lawyer does not have professional liability insurance of at least $100,000 per occurrence and $300,000 in the aggregate per year, subject to commercially reasonable deductibles, retention or co-insurance, and shall inform existing clients in writing at any time the lawyer's professional liability insurance drops below either of those amounts or the lawyer's professional liability insurance is terminated. A lawyer shall

*(Footnote Continued Next Page)*

(*See* Appellant's Brief, at 13-14, 16-26).[6]  Specifically, Appellant argues that claims-made policies like Appellee's nullify the protection afforded by Rule 1.4(c) because, even if an attorney maintains insurance coverage pursuant to the Rule while representing a client, "if the negligent attorney report[s] [a] claim one minute after the notice period expire[s], there would be no coverage."  (Appellant's Brief, at 19).

However, our Supreme Court has not held that claims-made policies are a violation of its intent in promulgating Rule 1.4(c), and, "[a]s an intermediate appellate court, we do not enunciate new precepts of law or expand existing legal doctrines, since that province is reserved to our Supreme Court."  ***Mountain Properties, Inc. v. Tyler Hill Realty Corp.***, 767 A.2d 1096, 1100 (Pa. Super. 2001), *appeal denied*, 782 A.2d 547 (Pa. 2001) (citations omitted).  Therefore, we decline Appellant's invitation to declare Appellee's claims-made insurance policy void on this basis.

In her second argument, Appellant argues that the notice-prejudice requirement of ***Brakeman*** should be extended to claims-made policies, and,

---

*(Footnote Continued)* ⸻⸻⸻⸻⸻

> maintain a record of these disclosures for six years after the termination of the representation of a client.

Pa.R.P.C. 1.4(c).

[6] Appellant's issue raises a question of law.  Therefore, our scope of review is plenary.  ***See Krepps v. Snyder***, 112 A.3d 1246, 1251 (Pa. Super. 2015), *appeal denied*, 2015 WL 5437445 (Pa. filed Aug. 31, 2015).

therefore, to the policy herein. (**See** Appellant's Brief, at 26-28). Appellant's argument lacks merit.

**Brakeman** involved an **occurrence**,[7] not a **claims-made**, policy, and held in the occurrence policy context, "where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position." **Brakeman**, **supra** at 198.

However, a panel of this Court has already expressly declined "to extend the **Brakeman** rule to claims-made insurance policies" and held "that in the 'claims-made' context, if an insured has clearly breached the notice requirement, an insurer need not show prejudice to deny coverage." **ACE Am. Ins. Co. v. Underwriters at Lloyds and Cos.**, 939 A.2d 935, 941 (Pa. Super. 2007), *affirmed*, 971 A.2d 1121 (Pa. 2009). Appellant's argument that we find otherwise is not legally persuasive.

Finally, the public policy arguments in Appellant's third claim do not merit relief. (**See** Appellant's Brief, at 28-34).

We observe that:

> **[W]hen the question is one of contract interpretation, public policy arguments are irrelevant**. Public policy concerns are always secondary to the clear and

---

[7] An occurrence policy "protects the policy holder from liability for any act done while the policy is in effect[.]" **Consulting Engineers**, **supra** at 85.

> unambiguous [terms of a] contract, which must be given its plain meaning. . . . Courts are bound to give effect to clear contractual terms and only examine public policy when enforcement of those terms would be contrary to a clearly expressed public policy.

*Clarke*, *supra* at 278 (citations and quotation marks omitted) (emphasis added).

Here, Appellant argues that Appellee's policy violates public policy because it is a contract of adhesion and its "late notice provisions constitute a prohibited unreasonable forfeiture." (Appellant's Brief, at 31 (capitalization omitted); *see id.* at 30-32). However, Appellant fails to provide evidence in support of these claims other than her recitation of alleged facts, or to identify any pertinent caselaw that contains "a clearly expressed public policy" against the enforcement of claims-made insurance policies. *Clarke*, *supra* at 278 (citation omitted); (*see also* Appellant's Brief, at 28-34); Pa.R.A.P. 2119(a)-(b). Therefore, Appellant's third argument is not legally persuasive.

Order affirmed.[8]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/20/2015</u>

---

[8] We deny Appellant's Application for Relief filed on August 7, 2015 as moot.